# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALAN MACFARLAN, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 09-cv-2246 |
| | : | |
| IVY HILL SNF, LLC, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM AND ORDER**

**Joyner, J.**                                                          **July 28, 2010**

This case is now before the Court on Defendant's Motion for Summary Judgment (Doc. No. 18). For the reasons set forth in the attached Memorandum the Motion shall be GRANTED in part and DENIED in part.

**Factual Background**

Plaintiff was employed as a maintenance director at Green Acres Rehab and Nursing Center from 1988 until April 1, 2008, at which point Green Acres Rehab and Nursing Center was purchased by Defendant, and the facility became Ivy Hill Rehabilitation and Nursing Care. Plaintiff remained employed at Defendant's facility until April 10, 2008, when he was terminated by Defendant.

On January 24, 2008, Plaintiff suffered a stroke. Plaintiff was entitled to leave under the Family and Medical Leave Act ("FMLA"), as he had been employed by the owner of the nursing

1

facility for more than twelve months and had worked for at least 1,250 hours in the preceding twelve-month period, and he began this leave on January 29, 2008. Defendant asserts that Plaintiff's FMLA leave expired on April 8, 2008, and that this was also the date that Plaintiff selected for his return to work when he requested the leave. Plaintiff, however, argues that he was allowed an additional two weeks of FMLA leave and that he did not select April 8 as his end date for FMLA leave. Instead, Plaintiff asserts that he simply informed Defendants that he had scheduled a doctor's appointment on April 8, which he expected would provide him with clearance to return to work. When Plaintiff did not return to work by April 8, 2008, he was terminated from his position. Plaintiff, however, asserts that he was never informed that he would be terminated if he did not return to work by April 8.

Plaintiff returned to Defendant's facility on April 16, 2008, at which point Defendant states that he was eligible for re-hiring. At that time, however, Plaintiff had only been cleared by his doctor to work part time, starting on May 1, and Plaintiff was not permitted to push, pull, or lift anything weighing over twenty pounds. Plaintiff was informed that part-time work was likely not available, and that he should inform Defendant as soon as he was able to return to full-time work. On April 17, 2008, Plaintiff faxed a doctor's note to Defendant

2

informing it that he was now cleared to return to full-time work immediately, but that the weight limitation remained. Several days later, Plaintiff was informed that any new hires required full-duty clearance, and that Plaintiff would not be hired back with any lifting restrictions.

Plaintiff's lifting restrictions following the stroke were temporary. He received short term disability benefits from February through August of 2008, at which time Plaintiff was cleared by his doctor to return to work without any limitations. Following this clearance, Plaintiff again applied for a position with Defendant, but he asserts that he was never contacted in reference to this application. On August 4, 2008, Plaintiff filed a charge of discrimination with the Pennsylvania Human Relations Commission. This resulted in an opening of an investigation at that agency, but this investigation was closed without relief to Plaintiff on June 26, 2009.

Plaintiff filed his Complaint in this Court on May 20, 2009, and then filed an Amended Complaint on June 12, 2009. On November 30, 2009, Plaintiff, with Defendant's consent, again amended his Compliant to include a fourth cause of action. Count I is brought for violations of the FMLA and charges Defendant with both refusing to grant Plaintiff all of his allotted rights under the FMLA and terminating Plaintiff in retaliation for his taking leave under the FMLA. Counts II and III are brought for

disability discrimination pursuant to the Rehabilitation Act and Americans with Disabilities Act ("ADA"), respectively.  Finally, Count IV charges Defendant with violating the Pennsylvania Human Relations Act ("PHRA"), and also seeks to recover for disability discrimination.

## Standard

When a party files for summary judgment, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  In making a summary judgment determination, all inferences must be viewed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In order to survive a motion for summary judgment, however, the non-moving party cannot rely solely on the unsupported allegations found in the pleadings.  Id. at 324.  Instead, the non-moving party must raise more than "some metaphysical doubt" as to a material fact.  Matsushita, 475 U.S. at 586.  Further, when the non-moving party is the plaintiff, he must "make a showing sufficient to establish the existence of [every] element essential to [his] case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Finally, in making a decision as to whether there is a "genuine" issue of fact, the

4

court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

**Discussion**

**Count I**

Under the FMLA, employees who have worked for an employer for at least twelve months and for at least 1,250 hours during the past twelve months are entitled to twelve weeks of leave in any twelve-month period for, among other reasons, a health condition that prevents the employee from working. 29 U.S.C. § 2611(2)(A) (defining "eligible employee" for purposes of the FMLA); id. § 2612(a)(1)(D) (setting forth the leave entitlement). An employer can decide whether the twelve-month period during which its employees are entitled to twelve weeks of leave is the calendar year, some other fixed period such as a fiscal year, the twelve-month period measured forward from the date of the employee's first FMLA leave, or a "rolling" twelve-month period measuring backward from the date that an employee uses any FMLA leave. 29 C.F.R. § 825.200(b). If an employer does not make a selection, the method of calculation most favorable to the employee applies. Id. § 825.200(e).

The FMLA establishes two basic causes of action. Under 29 U.S.C. § 2615(a)(1), a plaintiff can bring a claim against an employer who refuses to grant the FMLA leave to which the

5

employee is entitled.  A plaintiff seeking to recover under this "interference" or "entitlement" provision must demonstrate that he was entitled to benefits and that his employer denied him these benefits.  Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005).  The FMLA also provides a cause of action for "retaliation" claims under 29 U.S.C. § 2615(a)(2).  Claims under this subsection require the plaintiff to show that he was protected under the FMLA, that he suffered an adverse employment action, and that there was a causal relationship between his taking or requesting FMLA leave and the adverse employment action.  Erdman v. Nationwide Ins. Co., 582 F.3d 500, 508 (3d Cir. 2009).  Although an employer is free to expand upon the leave provisions mandated by the FMLA, to the extent that an employer's policies conflict with and diminish an employee's rights under the FMLA, these policies are invalid.  Callison, 430 F.3d at 121.

In the present case, the parties do not dispute that Plaintiff was an eligible employee who was permitted FMLA leave following his stroke in early 2008.  The parties disagree, however, over how much leave Plaintiff was allowed, and whether his leave expired on April 8 or he was entitled to additional leave following that date.  At the time that Plaintiff's FMLA leave was approved, he received a form from Susan Stoduto, who served as the Human Resources Director for Defendant's

6

predecessor as well as for Defendant during the relevant time period, that informed him that his FMLA leave was approved starting on January 29, 2008, and continuing until "on or about April 8, 2008." In addition, Plaintiff's Request for Family or Medical Leave lists the anticipated date of return as April 8, 2008, and a notation is written in the margin that "10 weeks of FMLA remain for the year." Finally, on Plaintiff's FMLA Worksheet, the date that Plaintiff's FMLA leave ends is listed as "4/8/08," and his expected date of return is listed as "unknown." In his deposition, Plaintiff also testified that he never submitted any documentation to request a leave that would extend beyond April 8, 2008. He does state, however, that he informed Defendant that he would no longer be seeing his doctor on April 8 to receive clearance to return to work, and that his appointment had been changed to April 16. He further states that he was not informed that he would be terminated if he did not return by April 8, and that he was never informed that he was not eligible for additional FMLA leave past April 8.

The amount of time available to Plaintiff for FMLA leave following his stroke depends on the method that Defendant used to calculate his leave. Plaintiff took two weeks of FMLA leave from October 23, 2007, through November 7, 2007. If Defendant chose to employ a rolling period, therefore, Plaintiff would have been entitled to only an additional ten weeks of leave following his

7

January 2008 stroke. If, on the other hand, Defendant measured by the calendar year, he would have been able to take twelve weeks of leave following his January 2008 stroke. In this case, Defendant has failed to introduce any evidence relating to an official policy concerning the calculation of FMLA leave time. Although Defendant does introduce one page from its employee handbook that discusses FMLA policies, this only addresses intermittent and reduced FMLA options, the continuation of benefits during FMLA leave, and the return to work following FMLA leave. (Def.'s Mot. Summ. J. Ex. 14.) Nowhere in this exhibit or in any other evidence introduced by Defendant does Defendant state its official policy for calculating the twelve-month leave period. Although Defendant appears to have intended to apply the rolling standard in this case, as the notation on Plaintiff's Request for Family or Medical Leave that Plaintiff only had ten weeks of FMLA leave remaining and the deposition testimony of Susan Stoduto imply, Defendant has not introduced any evidence to demonstrate that this policy was officially chosen or that it was the policy that was applied to all employees. Plaintiff, on the other hand, has asserted that he was never informed that his leave would expire on April 8, that he essentially orally requested that his leave continue after April 8, and that he was never informed that his leave could not be extended.

Taking Plaintiff's testimony in combination with the lack of

8

evidence introduced by Defendant, a reasonable jury could infer that Defendant had not adopted a leave calculation policy. Summary judgment, therefore, is inappropriate at this time on Plaintiff's "interference" claim under the FMLA. If, at trial, Defendant establishes that it had adopted a rolling calculation for FMLA leave, then judgment will be appropriate in Defendant's favor.[1] If, however, Defendant cannot establish that it made a selection, the most favorable calculation to Plaintiff must be applied and Plaintiff would have been entitled to an additional two weeks of FMLA leave. Under these circumstances it then must be determined whether Plaintiff made an oral request to extend his FMLA leave, and whether this oral request was sufficient to extend his leave pursuant to Defendant's policies.

Turning to Plaintiff's "retaliation" claim under the FMLA, summary judgment is appropriate in Defendant's favor. Although Plaintiff has shown that he was protected under the FMLA, took

---

[1] To the extent that Plaintiff argues that even if Defendant had adopted a "rolling" calculation Defendant is equitably estopped from asserting that Plaintiff did not return to work on time, this argument is without merit. This is because Plaintiff cannot establish a misrepresentation made by Defendant, which is required in order to invoke equitable estoppel. As noted above, April 8, 2008, was listed on multiple forms provided to Plaintiff as Plaintiff's end date for FMLA leave. That Defendant may have been silent about the consequences of refusing to return does not constitute a misrepresentation. Plaintiff cites Dormeyer v. Comerica Bank-Illinois, 223 F.3d 579 (7th Cir. 2000), in support of his assertion that equitable estoppel should apply, but that case addressed a situation in which the employer's silence misled an employee about the fact that he was entitled to leave, and did not mandate that an employer inform an employee of the legal ramifications of refusing to return at the end of his approved leave. We do not believe that this is a situation in which an employer's silence can constitute a misrepresentation, and in the absence of a misrepresentation, Plaintiff's claim for equitable estoppel must fail.

9

his FMLA leave, and suffered an adverse employment action in being terminated from his employment, he has introduced no evidence that supports the finding of a causal relationship between his taking FMLA leave and his termination. Defendant has introduced voluminous evidence, including forms kept on file in the human resources office as well as the deposition testimony of its employees, that indicate that Plaintiff was terminated from his position because he failed to return to work at the end of his approved FMLA leave. As Plaintiff has introduced no evidence to the contrary or even argued to the contrary in his brief, we cannot find that Plaintiff's termination was causally related to his taking FMLA leave; instead, Plaintiff's termination was causally related to his not returning at the conclusion of his FMLA leave. Under these circumstances, summary judgment is appropriate in Defendant's favor on this portion of Plaintiff's FMLA claim.

**Counts II and III**

Plaintiff brings Counts II and III for disability discrimination pursuant to the Rehabilitation Act and the Americans with Disabilities Act, respectively. Both of these Acts are to be interpreted consistently, and the standard for determining liability is the same under both. McDonald v. Pa., Dep't of Pub. Welfare, Polk Ctr., 62 F.3d 92, 94-95 (3d Cir. 1995). Under both of these statutes, a plaintiff first must

demonstrate that he is a qualified individual with a disability. Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006). A person can be considered disabled in one of three ways: first, if he has an impairment that substantially limits the performance of a major life activity; second, if an individual has a record of such an impairment; and third, if the individual is regarded as having such an impairment. Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 380 (3d Cir. 2002). If a plaintiff is attempting to proceed as an individual who is regarded as having an impairment, the impairment that he is regarded as having must substantially limit the performance of a major life activity. Id. at 381. Importantly, a "temporary, non-chronic impairment of short duration is not a disability." Id. at 380.

In the present case the parties do not appear to dispute the actual limitations suffered by Plaintiff. Although Plaintiff was temporarily unable to work or perform a large range of functions, at the time that Defendant refused to re-hire him following his receiving clearance to return to work full time on April 17, 2008, the only limitation faced by Plaintiff was an inability to push, pull, or lift anything weighing over twenty pounds. As the Third Circuit has previously found that an inability to lift even ten pounds did not qualify as a disability, Marinelli v. City of Erie, Pa., 216 F.3d 354, 364 (3d Cir. 2000), Plaintiff cannot be

considered a person with a disability.  Further, as any period during which Plaintiff was substantially limited in the performance of a major life activity was temporary, the few-month period following his stroke also cannot constitute a record of having a disability.  Should Plaintiff be able to establish that he is a qualified person with a disability, he will have to demonstrate that Defendant perceived him as having a disability.

Plaintiff introduces only one piece of evidence in support of his assertion that Defendant regarded him as disabled:  the deposition testimony of Akive Grunewald, who is currently the Chief Operations Officer of Global Health Care Services Group, which is a corporation that provides administrative support to a group of nursing homes, including Ivy Hill.[2]  The testimony to which Plaintiff points, however, does not show any misunderstanding about the nature of Plaintiff's impairment.  Although it might show a misunderstanding about the nature of the job for which Plaintiff was applying, it simply cannot be stretched to even imply that Defendant regarded Plaintiff as disabled.  Mr. Grunewald stated that

> [Plaintiff] came in with a note that he wanted his

---

[2]According to the testimony of Karen Thomas, the facility Administrator during the relevant period, it was Akive Grunewald who made the final decision that Plaintiff should not be re-hired, although Mr. Grunewald states that he did not have the authority to direct staffing decisions at Ivy Hill, but only to make suggestions.  Regardless of Mr. Grunewald's authority to make decisions, the deposition testimony introduced by Plaintiff is not sufficient to allow a reasonable jury to determine that Plaintiff was regarded as disabled, so we will not address whether a perception by Mr. Grunewald would be sufficient to allow Plaintiff's suit against Defendant to proceed.

> position back.  He had a physician's note that he was
> restricted to light duty. . . .  I told [Karen Thomas] I
> would follow her company policy with regard to light
> duty and not light duty.  Certain positions have the
> ability to have a light duty position, certain
> positions don't.  If the position requires heavy
> lifting, then obviously you can't have a light duty
> position in that position.

(Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. Ex. 7 at 48.)  Mr. Grunewald later stated that Plaintiff's position did not have the ability to be light duty because it "did require lifting.  It was a maintenance position.  It wasn't a clerical position."  (Id. at 49.)  None of this testimony shows any misunderstanding about Plaintiff's condition.  It simply states that Plaintiff had lifting restrictions, which was true, and that Mr. Grunewald did not believe that a person with lifting restrictions could perform the position for which Plaintiff was applying.  Although Mr. Grunewald may have perceived Plaintiff of being incapable of performing this specific job, there is no indication that he perceived Plaintiff as being incapable of working in general or of performing such a large range of jobs that he was perceived to be limited in the major life activity of working.  See Marinelli, 216 F.3d at 364 (noting that a plaintiff who is claiming the inability to work as a limitation on a major life activity must be unable to perform a broad range of jobs and cannot simply claim the inability to perform a specific task).  As any mistake as to perception was related to the tasks required for the position to which Plaintiff was applying and was not related to

Plaintiff's ability to perform a major life function, Plaintiff has not established that he was perceived as disabled, and cannot receive protection under the ADA or the Rehabilitation Act.

**Count IV**

Finally, Plaintiff's claim under the PHRA must fail for the same reasons that his claims under the ADA and the Rehabilitation Act failed. The PHRA has been interpreted consistently with both the ADA and the Rehabilitation Act. <u>Rinehimer</u>, 292 F.3d at 382; <u>Kelly v. Drexel Univ.</u>, 94 F.3d 102, 105 (3d Cir. 1996). Further, the definition of "disability" in the PHRA is "coextensive" with the definition contained in the ADA. <u>Fehr v. McLean Packaging Co.</u>, 860 F. Supp. 198, 200 (E.D. Pa. 1994). As discussed above, Plaintiff has failed to establish that he falls within this definition, and summary judgment in Defendant's favor is also appropriate on this Count.

## Conclusion

Genuine issues of material fact remain on Plaintiff's FMLA claim as to whether Defendant refused to provide Plaintiff with all of his allotted FMLA leave time, and summary judgment on Plaintiff's claim under 29 U.S.C. § 2615(a)(1) is denied. Plaintiff, however, has failed to show any evidence of a causal relationship between his taking FMLA leave and his termination, and summary judgment in Defendant's favor is appropriate on his claim pursuant to 29 U.S.C. § 2615(a)(2). Finally, as Plaintiff

has not established that he falls within the class of individuals protected by the Rehabilitation Act, ADA, or the PHRA, summary judgment must be entered in Defendant's favor on Counts II through IV.